IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | |
|---|---|
| **PAUL RAYMOND YOUNG,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 2:13-31184** |
| ) | |
| **CAROLYN. W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered December 11, 2013 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 11.)

The Plaintiff, Paul Raymond Young (hereinafter referred to as "Claimant"), filed an application for DIB on November 25, 2008 (protective filing date), alleging disability as of May 16, 2008, due to status post myocardial infarction in May, 2008; atrial fibrillation; coronary artery disease; asthma; and acid reflux.[1] (Tr. at 12, 268-71, 311, 315.) The claim was denied initially and upon reconsideration. (Tr. at 108-09, 132-34, 138-40.) On March 26, 2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 143-44.) A hearing was held on July 15,

---

[1] On his form Disability Report - Appeal, Claimant asserted as additional disabling impairments that his blood pressure was uncontrolled and that his breathing problems had worsened. (Tr. at 337.)

2010, before the Honorable Theodore Burcok. (Tr. at 29-56.) Subsequent to the hearing, Claimant requested a consultative examination. (Tr. at 113.) Supplemental hearings were held on March 10, 2011, and March 11, 2011. (Tr. at 57-74, 75-81.) By decision dated April 12, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 113-21.) On May 3, 2011, Claimant submitted a request for review of the ALJ's decision to the Appeals Council. (Tr. at 221-24, 376-80.) By Order of the Appeals Council, dated July 8, 2011, the ALJ's decision was vacated and remanded because the ALJ had relied upon the testimony of another claimant in describing Claimant's activities of daily living and in evaluating Claimant's credibility. (Tr. at 129-31.) On August 27, 2012, a hearing was held before ALJ William R. Paxton. (Tr. at 82-107.) By decision dated September 4, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-28.) The ALJ's decision became the final decision of the Commissioner on October 11, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on December 5, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§

404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, May 16, 2008. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "coronary artery disease, status post myocardial infarction and stenting; asthma; obesity; obstructive sleep apnea; status post surgical repair of right ankle fracture; back impairment; and bipolar disorder," which were severe impairments. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had the residual

functional capacity for sedentary work, as follows:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except can never perform climbing of ladders, ropes or scaffolds, can occasionally perform balancing, kneeling, crouching, crawling, and climbing of ramps and stairs. He must avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards such as heights and machinery, and even moderate exposure to fumes, odors, dusts, gases and poor ventilation. He is limited to understanding, remembering, and carrying out simple instructions and to no interaction with the public.

(Tr. at 17, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 26, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a sorter, an optical goods assembler, and a bonder, at the unskilled, sedentary level of exertion. (Tr. at 27-28, Finding No. 10.) On this basis, benefits were denied. (Tr. at 28, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 18, 1968, and was 43 years old at the time of the administrative hearing on August 27, 2012. (Tr. at 27, 86, 268.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 27, 87, 314, 321.) In the past, he worked as a merchandiser delivery driver, vending machine repairer, and pizza delivery driver. (Tr. at 26, 88-90, 104, 316.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments respecting common tremors.

On June 11, 2008, Dr. Mitchell Rashid, M.D., noted that Claimant denied any muscular weakness, seizures, or tremors. (Tr. at 412.) Dr. Elie G. Gharib, M.D., one of Claimant's cardiologists, noted that Claimant denied any tremors on multiple occasions. (Tr. at 442, 563, 590, 607, 814, 854, 862, 865.)

On November 12, 2008, Claimant reported having experienced some left chest wall discomfort and some tingling in his left hand as he was walking toward his car after he finished rehab. (Tr. at 455, 507.) He took two nitroglycerin tablets, which relieved his symptoms, but that the symptoms recurred when he walked back down to his vehicle. (Id.) He was taken to the Charleston Area Medical Center where his cardiac enzymes were within normal range and a chest x-ray revealed no acute process. (Tr. at 456.) He was advised to follow-up with Dr. Gharib as an outpatient. (Id.)

On November 25, 2009, it was noted at CAMC that he had a past medical history of common

tremors, though he had no current complaints related to them other than some episodes of numbness and tingling in his hands, which was believed to have been associated with the chest pain he experienced. (Tr. at 664.)

On February 17, 2010, Faye Williamson, P.A., of Cabin Creek Health Center, noted in the "Problem List" that Claimant had common tremors. (Tr. at 635.) However, Claimant made no further complaints about the tremors. (Tr. at 635-36.) On April 22, 2010, Dr. Gharib, of West Virginia Heart & Vascular Institute, noted that Claimant denied any tremors. (Tr. at 638.) On April 21, 2009, a progress note from Rakesh K. Vohra, M.D., of University Health Associates noted that along with Claimant's complaints of fatigue, shortness of breath, and extreme lethargy, he complained of tremors in his hands. (Tr. at 646, 777.) On neurological examination, Dr. Vohra noted no gross focal findings. (Id.) Dr. Vohra recommended a neurological consultation for the tremors and weakness. (Tr. at 647, 778.)

On August 17, 2009, Claimant's treating physician, John P. Richard, D.O., referred Claimant to Glenn R. Goldfarb, M.D., a Neurologist, for complaints of hand tremors. (Tr. at 696, 715.) Dr. Goldfarb examined Claimant on September 17, 2009. (Tr. at 648, 755.) Claimant reported that his tremors began at the age of 14 or 15, and occurred when he was reaching, holding, or writing. (Id.) The tremor was not present at rest and Claimant believed that the tremor had worsened since his heart attack. (Id.) Dr. Goldfarb noted on exam that the tremor was very apparent with intention, such as on finger nose testing, and was less apparent with sustained posture of the outstretched arms. (Id.) He noted a normal gait, reflexes, and sensation. (Id.) Dr. Goldfarb assessed essential, probably familial, tremors, and prescribed one half a Klonopin, three times a day, 20 minutes before meals. (Id.) Claimant returned to Dr. Goldfarb on April 4, 2010, and reported that the Klonopin did not help his tremors. (Tr. at 754.) Dr. Goldfarb noted that the tremors were slight and very mild, intentional

6

tremors. (Id.)

On September 14, 2010, Kip Beard, M.D., conducted a consultative examination. (Tr. at 782-92.) Dr. Beard acknowledged Dr. Goldfarb's 2009, diagnosis of probable familial tremor, but observed on physical examination that Claimant was able to button and pick up coins with either hand, write with the dominant hand without difficulty, had full range of bilateral hand motion, had no evidence of atrophy, was able to make a fist bilaterally, and was without tenderness, redness, warmth, or swelling of either hand. (Tr. at 784-85.) There was no evidence of weakness on manual muscle testing and effort was good, and sensation was intact. (Tr. at 785.)

On October 20, 2010, Dr. Goldfarb increased Claimant's Klonopin to two pills, three times a day for his slight and very mild tremors. (Tr. at 793, 817.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to follow the "slight abnormality" standard in finding that Claimant's essential, common tremors were a non-severe impairment. (Document No. 10 at 15-18.) Pursuant to SSR 96-3p, Claimant asserts that for an impairment to be a non-severe impairment, it must be a slight abnormality that has no more than a minimal effect on the ability to perform basic work activities. (Id. at 16.) Claimant contends that because the ALJ found that his tremors were a non-severe impairment, the condition presumptively was a medically determinable impairment, and therefore, it was determinative upon the evidence, as to its severity. (Id. at 16-17.) Claimant relies upon Dr. Goldfarb's findings that the tremors were "very apparent" upon finger-nose-finger testing as evidence of a severe impairment. (Id. at 17.) Furthermore, he notes his testimony that the tremors were worse with fine motor activity, which was consistent with Dr. Goldfarb's observations. (Id.) Claimant notes that the VE testified that most sedentary jobs required only occasional use of the

7

hands and required public contact. (Id. at 17-18.) The combination of occasional manipulative limitations with no public contact would eliminate all sedentary level jobs pursuant to the VE's testimony. (Id. at 18.) Claimant therefore asserts, that had the ALJ found his tremors to have been a severe impairment, the limitations would have had a significant impact on the ALJ's findings at step five. (Id.)

In response, the Commissioner asserts that the record demonstrated that Claimant's hand tremors failed to cause significant functional limitations, and therefore, were not a severe impairment. (Document No. 11 at 5-7.) The Commissioner asserts that the ALJ's severity finding and explanation is consistent with the record. (Id. at 6.) The Commissioner first notes that Claimant failed to make any mention of any difficulties with his hands or with reaching when he applied for benefits. (Id.) Next, the Commissioner notes that Dr. Goldfarb described his condition as only slight and mild. (Id.) Dr. Beard, likewise observed an absence of atrophy and noted that Claimant was able to button and pick up coins with both hands, was able to write with his dominant hand without difficulty, had normal range of motion testing, and did not exhibit any muscle weakness. (Id.) Furthermore, the Commissioner notes Claimant's activities to have included working on his antique car, repairing bikes, sweeping floors, cooking a little, and washing dishes. (Id.) Accordingly, the Commissioner asserts that the ALJ's decision is supported by substantial evidence. (Id. at 6-7.)

Analysis.

Claimant alleges that the ALJ erred in determining whether his essential tremors were a severe impairment. (Document No. 10 at 15-18.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2012). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical

8

functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."); SSR 96-3p (An impairment "is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

  In his decision, the ALJ acknowledged Claimant's testimony that he had difficulty holding things and writing legibly at times. (Tr. at 15.) Claimant testified that he had suffered from the tremors since he was 15 years of age, but that the tremors had progressively worsened, particularly after his heart attack. (Tr. at 95.) He stated that the tremors bothered him when he carried things or tried to pick up something, and that he had problems buttoning his shirts. (Tr. at 19, 98.) He testified that he had no problems using a pencil, but that his handwriting was messy. (Tr. at 99.) However, the ALJ noted that the objective evidence failed to support Claimant's subjective reports. (Tr. at 15.)

9

Specifically, the ALJ noted that Dr. Goldfarb noted on consultative examination that Claimant had no range of motion difficulties or tenderness of the hands, was able to pick up coins with both hands, and was able to write without difficulty. (Id.) Dr. Goldfarb assessed no functional limitations resulting from Claimant's tremors. (Id.) As noted above, Dr. Goldfarb noted that the tremor was "very apparent" with intention, meaning that it was observable, but assessed no limitations and even indicated that the tremors were slight and very mild. Furthermore, the ALJ acknowledged that Dr. Beard failed to assess any manipulative limitations. (Tr. at 15.) Dr. Beard observed that Claimant was able to button and pick up coins with either hand, write with the dominant hand without difficulty, had full range of bilateral hand motion, had no evidence of atrophy, was able to make a fist bilaterally, and was without tenderness, redness, warmth, or swelling of either hand. (Tr. at 15, 784-85.) The ALJ further noted that the state agency consultants, Dr. Gomez and Dr. Lim failed to assess any manipulative limitations. (Tr. at 15, 541-48, 622-29.) As the Commissioner notes, and the ALJ noted, Claimant's activities also contradict Claimant's allegations of a severe impairment. Claimant indicated that he worked on antique cars and repaired bikes, washed dishes, swept floors, and prepared small meals. (Tr. at 25.) Based on the foregoing, the undersigned finds that the record establishes that Claimant's essential hand tremors failed to result in any significant functional limitations, and therefore, the ALJ's decision that the tremors were not a severe impairment is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 26, 2015.

R. Clarke VanDervort
United States Magistrate Judge

11